**George Robert Goltzer**
**Attorney At Law**
**600 Fifth Avenue**
**10th Floor**
**New York, NY 10020**

George R. Goltzer                                               Tel. (212) 608-1260
Ying Stafford                                                   Cell (917) 553-6704
                                                                Fax (1646) 430-8944
                                                                grgoltzer@gmail.com

February 12, 2016

Re: **United States v. Tyrell Whitaker**
S1 12 Cr. 626 (ER)

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
United States Courthouse
40 Centre Street
New York, NY 10007
Via ECF and First Class Mail

Dear Judge Ramos:

This letter memorandum is submitted at the request, and on the behalf of the defendant, Tyrell Whitaker (hereinafter "Whitaker"). Specifically, Whitaker submits this memorandum pursuant to the All Writs Act (*See* 28 U.S.C. § 1651(a)) and Fed.R.CrimP. 33 which gives the Court "broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992); *see United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005). Additionally, Whitaker submits that a new trial is warranted based upon newly discovered evidence pursuant to Fed.R.Crim.P. 33(b)(1), a period which does not expire in this case until August 25, 2017 (within 3 years after the verdict or finding of guilty). In essence, Whitaker asserts that had the Court been accurately informed by the government of the facts and circumstances of Whitaker's alleged participation in the homicide of Jeffery Henry the Court would have denied the government's motion to certify him as an adult.

I. The Procedural Background

A. The Juvenile Proceedings

On October 18, 2011, the government filed a juvenile information, S1 12 Cr. 922 (ER) charging Whitaker with committing acts of juvenile delinquency in violation of Title 18, United

1

States Code, Section 5031 et seq. Specifically, Whitaker was charged with participating in a robbery and using and carrying firearms that caused a death during in relation to, and possessing firearms in furtherance, of that robbery, in violation of Title 18, United States Code, Sections 1951, 924(j) and 2.

On December 17, 2012, the government pursuant to Title 18, United States Code, Section 5032, moved for an order transferring Whitaker a juvenile, to adult status and permitting the government to proceed against him by Criminal Indictment. On April 10, 2013, Whitaker submitted its opposition brief. On July 24, 2013, the Court conducted a hearing regarding the certification to adult status of Whitaker. Subsequently, the Court granted the government's motion to transfer Whitaker to adult status. The decision was rendered orally on August 2, 2013. Notice of interlocutory appeal was timely filed on August 12, 2013. The Court of Appeals issued a summary order denying the defendant's interlocutory appeal. The appeal mandate was issued on May 16, 2014.

    B.  Superseding Indictment and Trial

Thereafter on August 4 2014, Tyrell Whitaker was tried as an adult along with defendants Raymond Christian, a/k/a "Reckless," Glenn Thomas, a/k/a "Gucci," on the indictment captioned *United States v. Raymond Christian*, et al., S3 12 Cr. 626 (ER)(the "S3 Indictment"), which charged the following:

> Count Two. Christian, Thomas and Whitaker were charged with committing the December 15, 2010 robbery at 54 Chambers Street, in violation of Title 18, United States Code, Sections 1951 and 2.
>
> Count Four. Christian, Thomas and Whitaker were charged with the murder of Jeffrey Henry through the use of a firearm arising from the robbery at 54 Chambers Street, in violation of Title 18, United States Code, Section 924(j).
>
> Count Five. Christian, Thomas, and Whitaker were charged with the possession or use of firearms during and in relation to the robbery at 54 Chambers Street, which were brandished and discharged, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) & (iii).

After several weeks of trial, on August 22, 2014, the jury rendered a guilty verdict against Whitaker.

During the trial it became abundantly clear that the government's proffer regarding Whitaker's participation in the murder of Henry during the juvenile proceedings directly contradicted the evidence presented at trial.

2

# ARGUMENT

### C. The Facts Presented At The Juvenile Proceedings

At the Juvenile Proceedings the government steadfastly maintained that Whitaker was one of the shooters that caused the death of Henry. The government stated that Whitaker and "one other individual fired a number of shots that struck and killed Henry." *See* Govt. Reply Memo. at 3. Specifically, that Whitaker and one other robber were on the inside of the front door and tried to force it open and "began firing both through the door and, whenever they were able to crack it open, out the door. As a direct result one of their shots hit Henry and Henry released the door. A second shot also hit Henry (either before or after Henry released the door) and the robbers all ran from the apartment." *Id*.

Thus the government was able to portray Whitaker as the violent shooter in the group that had the presence of mind to bring a gun and shoot the victim dead. This was extremely prejudicial to Whitaker during the Juvenile Proceedings and the defense had no ability to rebut it.

### D. The "Nature Of the Charges" Against Whitaker Was The Determining Factor In His Certification As An Adult

The government relied heavily upon the nature of the offense charged. The government argued that the Court should consider in making the transfer decision in a case involving serious acts of violence such as the Whitaker case, courts have often afforded greater weight to the "nature of the offense" factor than to other factors. "[W]hen a crime is particularly serious; the district court is justified in weighing this factor more heavily than the other statutory factors." *Id. reply brief at 9*. In particular, the government argued the factors that should be afforded the greatest weight in this case – namely, the seriousness of Whitaker's crimes, including his participation in the armed robbery and murder of a Newburgh drug dealer. Id.

Further, the government played upon the fact that if Whitaker was not transferred to adult status, he would face a maximum of five years of incarceration in a juvenile facility. *See* 18 U.S.C. § 5037(c)(1)(A).

The Court made a point at the hearing to raise the fact that Whitaker went to the robbery with a gun and that evinced Whitaker had the presence of mind that a murder would happen.

> THE COURT: It sound as though you are asking me to consider that the perpetrator of that attempted robbery had very little idea that anything like this might happen. They went in with fully loaded five guns into a location that they knew to be a place where drugs were stashed and in the all likelihood the individuals would be armed.

Transcript of Hearing at 47. But, in fact that is not what the trial evidence revealed. The trial evidence revealed – if it is to be believed - that only two perpetrators were armed with a gun that could not be connected to the ballistics evidence in the case.

3

Thus, the Court was misled about the nature of the charges against Whitaker. If the Court got the wrong impression, so did the Court of Appeals, and under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), a new trial should be ordered because of the "reasonable probability" that but for government's misleading facts regarding the crime committed, Whitaker would not have been certified as an adult and facing lifetime imprisonment.

E. The Facts Revealed At Trial

At trial it was conclusively revealed that Whitaker in fact, could not and did not, shoot Henry. In their closing argument the government could not ignore that the evidence presented indicated that Whitaker could not have been the shooter.

> Here is Baynes' diagram…And you know this is what he did back in 2011. Remember what he said about this. The bottom, Bash and Bow Wow, right 2 by the door. There's Jeffrey right on the other side of the door. There's Baynes next. Quay Quay and Gucci. Then Reckless. And then Baby E. He said Baby E was shooting back. Akinto was shooting in one direction. Baby E was shooting back. He said that Gucci started where he drew, right here. But that at some point he came to help Bash and Bow Wow, to help them because they were struggling with Jeffrey Henry. They weren't able to get the door opened. So Gucci moved and changed positions.

Trial Transcript at 2197. At trial the government argued it didn't matter who shot Henry. Because the jury find Whitaker guilty on a theory of aiding and abetting. A stark and distinct difference from what was presented at Whitaker's Juvenile Proceedings. The government continued to argue in their closing argument that it did not matter who was the shooter.

> Now what about the big question? Who shot and killed Jeffrey Henry? Was it Bash, Bow Wow, Gucci, Akinto Boone? Ladies and gentlemen, I'm just going to dismiss that out of hand. Akinto Boone told you that the hallway curved. It would take a magic curving bullet for Akinto Boone to shoot around that hallway. You saw that door. It didn't have any bullets in it. And as you heard from every witness, the door was barely opened. Let's forget about that Akinto Boone, those questions. That's ridiculous. Now, it's a distraction. But the question is --because if I were you, I would have been sitting here through this trial wondering who was the shooter? Which robber shot Mr. Henry? And the fact is we don't know. You heard that Bow Wow, Gucci, and Bash were taking turns firing at Mr. Henry. But you heard no evidence as to which of the robbers fired those fatal shots.
>
> But here's the bottom line. It doesn't matter. It doesn't matter. As I said earlier, each of the defendants is charged not only with committing the robbery and murder but also aiding and abetting

4

> those crimes as well. I expect that Judge Ramos' instruction will make clear to you that if you aid or abet the shooter, you are just as guilty as if you pulled the trigger.

Trial Transcript 2205-2206. The government was also forced to speculate as to Whitaker's involvement in Henry homicide.

> Bow Wow and Gucci were given revolvers by Mallory and Kev Gotti. They were not 9-millimeters. But you don't know what caliber gun Bash had. Maybe it was a 9. Maybe he's the one who shot Mr. Henry. Maybe the robbers traded guns before the robbery. And even though Bow Wow and Gucci had the .38 5 revolvers from Mallory and Gotti, maybe they swapped them with Bash and Baby E. We don't know. Anthony Baynes didn't know. Jamar Mallory didn't know. But it's besides the point.

Trial Transcript at 2206. The defense pointed out that these arguments by government contracted their central piece of evidence – the Burden/Mallory tape.[1]

> It has always been the government's contention through the tapes, the Burden/Mallory tape, Tyrell Whitaker on the night of the robbery, and I tell you he wasn't there, had the chrome gun with the wheel, the .38. A weapon that parenthetically, although it is of some interest, could not have killed anyone.

Trial Transcript at 2266. The government's own ballistics expert supported the fact that Whitaker could not have been the shooter in the homicide of Henry.

> There's no dispute about that. In fact, their own expert, Mr. Frederick, was asked by one of these lawyers when he came back the next day: Do you know now whether you can fire a semiautomatic .380 or a nine-millimeter from a .38? He says, yes. How do you know? I tried it last night, and it doesn't work. So we know that that particular gun didn't kill Mr. Henry.

> Do you think Baynes, who was mixing truth and fiction, was lying about the silver revolver? Why would he? He had to give them something. He had to give up a couple of people. On the day it happened, in the hospital, he told the police again and again, They both had guns. One of them had a silver or chrome revolver. That's the only silver or chrome revolver in the case.

Trial Transcript 2267-2268.

---

[1] The Burden/Mallory tape was the basis of Whitaker's post-trial motion for a new trial for among other reasons it was entirely unreliable

5

F. The All Writs Act[2]

Whitaker submits that this Court should reconsider its Order to transfer Whitaker to adult status given that the information provided to the Court at the time was misleading and false. The Court can grant this application by way of the AWA and Fed. R. Crim. P. 33. The AWA provides in totality: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *See* All Writs Act, 28 U.S.C. § 1651(a) (2000). The AWA has been described as "[t]he most expansive and open-ended language" in the Judiciary Act. The Act allows a federal court to "avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172–73 (1977).

G. Federal Rule of Criminal Procedure 33

Similarly, under Rule 33 of the Federal Rules of Criminal Procedure, this Court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). Although the burden of showing "essential unfairness" is on the defendant, *United States ex rel. Darcy v. Handy*, 351 U.S. 454, 462 (1956) (citations omitted), the Court "must strike a balance between weighing the evidence and credibility of witnesses and not wholly usurp[ing] the role of the jury." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001). As a result, "[t]he ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134 (citation omitted); *see United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006).

   a. Timeliness

With regard to the timeliness of the motion Rule 33 has been construed to allow a Fed.R.Crim.P. 33 new trial claim to be made at this time, under the "excusable neglect" provision. *United States v. Polouizzi*, 687 F. Supp. 2d 133 (E.D.N.Y 2010) (Weinstein, J.). (The Second Circuit vacated the new trial order in a summary order, but the *vacatur* was on the merits, not on the ground of procedural correctness of the Rule 33 order. *United States v. Polouizzi*, 09-4594, 393 Fed.Appx. 784 (2d Cir. 2010).

H. The Importance of Collateral Relief in Juvenile Cases

Collateral relief is a vital part of the American criminal justice system. By filing post-conviction petitions after the close of direct appeal, defendants can raise claims based on evidence outside the record that was not known or available at the time of trial. The ability to invoke collateral relief is critical for adjudicated juveniles. Youth have been shown to be especially vulnerable as a population to wrongful conviction—and, in particular, to false confession. As the U.S. Supreme Court has recognized on several occasions, juveniles are categorically less mature, less able to weigh risks and long-term consequences, more vulnerable to external pressures, and

---

[2] (hereinafter referred to AWA)

6

more compliant with authority figures than are adults. The Supreme Court has concluded, in turn, that these youthful traits mean that the risk of false confession is "all the more troubling" and "all the more acute" when the "subject of a custodial interrogation is a juvenile."

This conclusion has roots that extend back to the 1967 Supreme Court case In re Gault, in which the Supreme Court explained that "authoritative opinion has cast formidable doubt upon the reliability and trustworthiness of 'confessions' by children." *In re Gault*, 387 U.S. 1, 52 (1967), *see also Roper v. Simmons*, 543 U.S. 551, 569 (2005) and *Graham v. Florida*, 130 S. Ct. 2011, 2026-27 (2010).

## CONCLUSION

For the reasons stated the defendant's application should be granted.

Respectfully submitted,

\_/S/_____
George Goltzer
Ying Stafford
Attorneys for Tyrell Whitaker

cc: All Counsel (ECF)

7