FCL3WILS                          Sentence

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4               v.                          12 CR 626 (ER)

 5   JAMES WILLIAMS,

 6               Defendant.

 7   ------------------------------x

 8                                           New York, N.Y.
                                             December 21, 2015
 9

10   Before:

11                   HON. EDGARDO RAMOS,

12                                           District Judge

13
                          APPEARANCES
14
     PREET BHARARA
15        United States Attorney for the
          Southern District of New York
16   ANDREW BAUER
     KAN M. NAWADAY
17        Assistant United States Attorneys

18
     LAW OFFICE OF RICHARD JASPER
19        Attorneys for Defendant
     RICHARD JASPER
20        -and-
     LAW OFFICE OF SUSAN K. MARCUS
21        Attorneys for Defendant
     SUSAN K. MARCUS

22

23

24

25

FCL3WILS                          Sentence

1              THE DEPUTY CLERK:  In the matter of the United States

2       of America v. James Williams, counsel, please state your name

3       for the record.

4              MR. BAUER:  Good afternoon, your Honor.  Andrew Bauer

5       and Kan Nawaday for the government.

6              THE COURT:  Mr. Bauer, Mr. Nawaday.

7              MR. JASPER:  Good afternoon, your Honor.  Richard

8       Jasper and Susan Marcus for Mr. Williams.

9              MS. MARCUS:  Good afternoon.

10             THE COURT:  Good afternoon to you both, and good

11      afternoon to you, Mr. Williams.

12             THE DEFENDANT:  How you doing, sir.

13             THE COURT:  I'm well, thank you.

14             This matter is on for sentencing.  And in preparation

15      for today's proceedings I have reviewed the following:  I have

16      reviewed the letters from Mr. Williams' attorneys dated

17      November 20, 2015, which attaches, among other documents, a

18      report by a litigation specialist, also dated November 20,

19      2015; documents from family court, school, and various public

20      agencies concerning Mr. Williams and his family; copies of

21      correspondence from Mr. Williams to this Court, and to

22      then-Attorney General Eric Holder; a letter submitted by

23      Mr. Williams' brother, older brother John Williams.  The

24      submissions also includes a videotape approximately 15 minutes

25      in length of interviews of Mr. Williams' mother and the mother

FCL3WILS                          Sentence

1    of his child.  And finally, I have reviewed the government's

2    submission dated November 30, 2015.

3              I do note that there appears to be a small child in

4    the courtroom.  I am trying to speak over the child.  But he is

5    speaking and it is disrupting the proceedings.  So if it

6    continues, I may have to ask you to take the child outside if

7    you don't mind.

8              THE DEFENDANT:  Go ahead, take him outside.

9              THE COURT:  So I have indicated everything that I have

10   reviewed.  Is there anything else I should have received or

11   reviewed?

12             MR. BAUER:  Judge, the PSR, just to be clear, is

13   dated -- the one I have is dated December 15, 2015.

14             THE COURT:  Did I say something else?

15             MR. BAUER:  I'm not sure if you mentioned the PSR.

16             THE COURT:  It is dated December 15, 2015.  And it is

17   prepared by U.S. Probation Officer Wanda Whitney, and it

18   includes a recommendation.

19             So, is there anything else, Mr. Bauer?

20             MR. BAUER:  Not from the government, your Honor.

21             THE COURT:  Mr. Jasper or Ms. Marcus?

22             MR. JASPER:  I don't believe so, your Honor.

23             THE COURT:  Okay.  Mr. Jasper, let me begin with you.

24   Have you and Ms. Marcus read the presentence report and

25   discussed it with your client?

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 4 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 4 of 35          4
FCL3WILS                    Sentence

1          MR. JASPER:  We have reviewed it with Mr. Williams,

2     your Honor, and discussed it, yes.

3          THE COURT:  Mr. Williams, have you received a copy of

4     the presentence report and discussed it with your attorneys?

5          THE DEFENDANT:  No.

6          THE COURT:  You have not received it?  Have you

7     discussed the presentence report with your attorneys?

8          THE DEFENDANT:  Somewhat.

9          THE COURT:  Okay.  Mr. Williams, are you dissatisfied

10    with the amount of time that you have had to review the

11    presentence report or the time that you've had to review the

12    report with your attorneys?

13         MR. JASPER:  I'm sorry, your Honor.  I don't think he

14    heard the question.

15         THE COURT:  Yes.

16         MR. JASPER:  Can we just have one second, Judge?

17         THE COURT:  Sure.

18         (Pause)

19         THE COURT:  Have you had an adequate opportunity to

20    review the report and discuss it with your attorneys?

21         THE DEFENDANT:  No.

22         THE COURT:  Okay.  Would you like some additional time

23    to review the report and to discuss it with your attorneys,

24    Mr. Williams?

25         THE DEFENDANT:  Yes, sir.

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 5 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 5 of 35          5
FCL3WILS                    Sentence

1        THE COURT:  Mr. Jasper, how do you wish to proceed?

2        MR. JASPER:  Your Honor, if I could just have a moment

3   with Ms. Marcus and Mr. Williams.

4        THE COURT:  Okay.

5        MR. JASPER:  I apologize, Judge.

6        THE COURT:  Do you want me to step out?

7        THE DEFENDANT:  You can stay.

8        THE COURT:  Okay.

9        (Pause)

10        MR. JASPER:  Judge, perhaps we need a few minutes to

11   discuss this with Mr. Williams, and I'll be able to indicate

12   whether or not we're ready to proceed.

13        MS. MARCUS:  Your Honor, we did visit Mr. Williams

14   this weekend in an attempt to go over the portion of the -- we

15   did visit Mr. Williams this weekend in an attempt to go over

16   the PSR in detail.  Unfortunately, the day we were able to go

17   was the sabbath for Mr. Williams, and he wasn't able to do work

18   on the sabbath.  So we came today and there was a delay in

19   visiting him.  So apologies for delaying the proceedings.

20        THE COURT:  I'll give you some time to review it with

21   him.  I do note, as indicated at the beginning, that the final

22   was prepared December 15, so that's only a few days ago.  I'll

23   give you some additional extra minutes to discuss it with

24   Mr. Williams.

25        MR. JASPER:  Thank you, Judge.

FCL3WILS                              Sentence

1          (Recess)

2          MR. JASPER:  I think we're ready to proceed, your

3     Honor.

4          THE COURT:  Okay.  So we shall proceed.

5          Let me again turn to you, Mr. Williams.  Have you had

6     an adequate opportunity to discuss the presentence report with

7     your attorneys?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Are there any objections to the report

10    concerning its factual accuracy?  Mr. Bauer.  Mr. Bauer?

11         MR. BAUER:  Sorry.

12         THE COURT:  Any objections to the report concerning

13    its factual accuracy?

14         MR. BAUER:  No, your Honor.

15         THE COURT:  Mr. Jasper?

16         MR. JASPER:  No, Judge.

17         THE COURT:  Although I am not required to impose a

18    sentence within the sentencing range calculated under the U.S.

19    sentencing guidelines, I am required to consider the guidelines

20    in imposing sentence.  And in order to do that, I need to

21    determine the applicable sentencing range.

22         Mr. Williams entered a plea of guilty to a two-count

23    superseding information charging him with taking part in a

24    conspiracy to commit an armed robbery of individuals believed

25    to be in possession of narcotics in violation of the Hobbs Act.

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 7 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 7 of 35          7

FCL3WILS                          Sentence

1  And that conduct violated 18, United States Code, Section 371,

2  and he also pleaded guilty to a count of providing a firearm to

3  another with the knowledge that it would be used in connection

4  with a crime of violence or a drug trafficking violation in

5  violation of 18 U.S.C. 924(c)(1).  That second count carries a

6  mandatory consecutive term of imprisonment of 10 years.

7          The base offense level for Count One is 43, because a

8  victim was killed under circumstances that constitute murder in

9  violation of 18, United States Code, Section 1111.  From that

10  three levels are deducted for Mr. Williams' acceptance of

11  responsibility yielding a total offense level of 40.  And

12  because Mr. Williams has I think six criminal history points,

13  he is in criminal history category III.

14          Are there any issues concerning the accuracy of the

15  presentence report or calculation under the guidelines,

16  Mr. Bauer?

17          MR. BAUER:  No, your Honor.

18          THE COURT:  Mr. Jasper?

19          MR. JASPER:  No, your Honor.  I'm sorry, your Honor,

20  just --

21          THE COURT:  Yes, sir.

22          (Defendant confering with his counsel)

23          MR. JASPER:  No objection, your Honor.

24          THE COURT:  Thank you, Mr. Jasper.  Based on the

25  parties' representations that in their view the guideline

Case 1:12-cr-00626-ER  Document 440-5  Filed 10/06/20  Page 8 of 35
Case 1:12-cr-00626-ER  Document 408  Filed 01/20/16  Page 8 of 35                    8
FCL3WILS                        Sentence

1   calculation in the PSR is accurate and my independent

2   evaluation, I accept the guideline calculation in the

3   presentence report, and find that the total offense level on

4   Count One is 40, the criminal history category is III,

5   resulting in a sentencing range of 360 months to life.

6   However, as the maximum term of incarceration on Count One is

7   60 months, the effective guideline range is 60 months on Count

8   One, and the range on Count Two is 120 months, to be applied

9   consecutively, resulting in a sentencing range of 120 to 180

10  months.

11          Mr. Bauer, does the government wish to be heard before

12  I impose sentence?

13          MR. BAUER:  Yes, your Honor.  Thank you.  Judge, this

14  case was charged back I think it was September of 2012, and we

15  have been before your Honor with both Mr. Williams and his

16  co-defendants many times, and know that your Honor is quite

17  familiar with the procedural background that's gotten us here

18  today as relates to Mr. Williams.

19          All I am saying on that procedural background is that

20  this was a very complicated case for the Court, for defense

21  counsel I know, but even for the government, your Honor.  And

22  what it took was a number of meetings with defense counsel to

23  try to achieve a resolution that was acceptable to

24  Mr. Williams, but also acceptable to all the parties to make

25  sure that Mr. Williams was in fact competent and able to

Case 1:12-cr-00626-ER Document 448-5 Filed 10/06/20 Page 9 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 9 of 35          9
FCL3WILS                          Sentence

1    represent himself in his own defense.

2              I think we did that, your Honor.  And I think to

3    Mr. Jasper and Ms. Marcus' credit, they were amazing advocates

4    for Mr. Williams.  Patient and really compassionate to his

5    needs.  And they advocated strongly for his interests as it

6    relates to the resolution, in particular for Mr. Williams.

7              I bring this up, your Honor, because there are times

8    where there are cases before your Honor where the parties reach

9    an agreement, but at the end of the day we say, all right, the

10   sentence can be anywhere between the mandatory minimum and life

11   and we'll see where the judge comes out here.

12             Your decision here at sentencing, obviously, is the

13   only one that controls, but I want to draw specific attention

14   to the resolution here today.  As I just said, if not for the

15   advocacy of Mr. Jasper and Ms. Marcus, before we were even

16   sitting here today, the guidelines would be 360 to life and

17   your Honor could choose to go lower than 360 to life, but who

18   knows if you actually would have gone all the way to down to

19   what defense counsel is asking for, which is 10 years.

20             On the other hand, we came up with a nuanced

21   resolution here that both satisfied the government's interest

22   but also defense's interest by capping Mr. William's exposure

23   at 15 -- at 15 years.  At least functionally capping it at 15

24   years.

25             So, I say this all to say, your Honor, that a lot of

FCL3WILS                          Sentence

1    advocacy was done before we came into your courtroom here

2    today, and from our perspective, the guidelines sentence which

3    is 15 years, 180 months, represents not only a pie in the sky

4    number or just simply something that's been divined by the

5    sentencing commission, but rather, something that is a fair

6    outcome for Mr. Williams, and one that we arrived on with a

7    tremendous amount of work.

8            Now, why do I say that 180 months is appropriate for

9    Mr. Williams?  Well, your Honor, you sat through the trial of

10   Mr. Williams' co-defendants, and you heard some of the evidence

11   against Mr. Williams.  You heard the cooperating witnesses talk

12   about how he was a leader of the Bloods there in Newburgh.  You

13   heard police officers who had seized crack, who had seized guns

14   from his apartment.  And of course you heard about his role in

15   the murder of Jeffrey Henry.

16           He was not there shooting the gun.  He was not even

17   there on site at the time.  But, he was instrumental in the

18   planning, he recruited members, he was responsible for getting

19   the guns, he, if you remember, he also cased the house on

20   Chambers Street.  He visited a friend who lived across the

21   street and wanted to stay there during the course of the

22   robbery to make sure it went through.

23           So the evidence was overwhelming as to what you've

24   heard.  I will also note, your Honor, that as a result of the

25   various Bloods prosecutions that were before Judge McMahon,

Case 1:12-cr-00626-ER  Document 440-5  Filed 10/06/20  Page 11 of 35
Case 1:12-cr-00626-ER  Document 268  Filed 01/20/16  Page 11 of 35          11
FCL3WILS                        Sentence

1    there were a number of cooperating witnesses who you didn't

2    hear from who, the only person from our case, from our

3    six-defendant case who they knew was James Williams.  Had James

4    Williams gone to trial, the cooperator list -- we would have

5    used our discretion and not put on too many repetitive

6    witnesses -- but our cooperating witness list would have

7    doubled or tripled.

8            They all knew about Mr. Williams, they all knew about

9    his extensive drug business, his possession of guns, storing

10   them all throughout the city, and his leadership role in the

11   Bloods.

12           So when looking at his conduct, when looking at the

13   guidelines, when looking at the 3553(a) factors, your Honor, 15

14   years is what we think is reasonable, and specifically to

15   address all the 3553(a) factors.

16           Before I sit down I will address the mental health

17   issues that are raised in great detail in defense counsel's

18   submission.  I will raise them to say only that I'm not an

19   expert, Mr. Nawaday is not an expert on mental health and the

20   best place and the best situation to treat Mr. Williams.  All I

21   have is my own observations, and my own experiences with other

22   defendants.  But what struck me, your Honor, not being an

23   expert but rather just looking at his history, is it's the

24   streets of Newburgh or being out rather than being in prison

25   did not seem to treat Mr. Williams well.  He thrived as a

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 12 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 12 of 35          12
FCL3WILS                    Sentence

1   criminal, but his mental health issues were still extensive.

2          And so, to the extent the argument is let him out

3   early so he can address his mental health issues, I would say I

4   don't see any real argument as to why he would do better out

5   versus in jail.  I mean, I've obviously read the submission,

6   but I think Mr. Williams' history, his pattern, make it clear

7   that when he's out, he was not doing better.  He was doing

8   worse.  He was locking himself in the bathroom for hours at a

9   time and Geneva didn't know what was going on.  So, it's not --

10  I'll stop my sentence there.

11         Your Honor, at the end of the day, as we wrote in our

12  submission, Mr. Williams has his issues, and we don't minimize

13  them.  But it is our job and I think your Honor's job and

14  3553(a) to not only think about Mr. Williams, but to think

15  about the public and to protect the public from his ongoing

16  crimes.  He spent a career committing crimes and torturing the

17  streets of Newburgh while he was out.  And here in this case,

18  in this courtroom, he's demonstrated that his mental health is

19  still very much an issue.  And for the sake of the public, the

20  government submits that a guideline sentence of 180 months is

21  appropriate.

22         THE COURT:  Can I ask you before you sit down,

23  Mr. Bauer.

24         MR. BAUER:  Sure.

25         THE COURT:  Do you have any insight into the crime

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 13 of 35
Case 1:12-cr-00626-ER Document 265 Filed 01/20/16 Page 13 of 35    13
FCL3WILS                    Sentence

1    that's discussed at paragraph 37 of the presentence report?

2    Which, strictly speaking, apparently he was charged with

3    menacing in the second degree, but the description says that,

4    according to Orange County, New York State records, the

5    defendant was charged with causing the death of an individual.

6    Do you have any insight into what happened there?

7            MR. BAUER:  Judge, I believe that is referring to a

8    separate charge on which Mr. Williams went to trial as a murder

9    trial and in which he was ultimately acquitted.  So, I

10   certainly know that the last sentence, the death of Elisha

11   Stubbs, relates to that.

12           THE COURT:  Okay.

13           MR. BAUER:  I can look at the rap sheet if you want me

14   to, but I don't know the exact relationship between that trial

15   and the crime that's in paragraph 37.

16           THE COURT:  Okay.  Thank you.

17           MR. JASPER:  I think that's accurate, your Honor.

18   There was a full-blown acquittal on that.

19           THE COURT:  I was going to ask you too, Mr. Jasper.

20           MR. JASPER:  I should have been more patient, Judge.

21           THE COURT:  That's quite all right.

22           MR. JASPER:  Full-blown acquittal of that charge.

23   Sorry.

24           MR. BAUER:  So in other words, I think that's

25   consistent with what the folks in Newburgh had told me, that he

1   was convicted of the menacing but acquitted of the murder.

2           THE COURT:  Okay.  Thank you.  Mr. Jasper or

3   Ms. Marcus, did you wish to be heard?

4           MS. MARCUS:  Just briefly, Judge.

5           THE COURT:  Please use the microphone if you don't

6   mind.

7           MS. MARCUS:  Sure.  As Mr. Bauer says, this negotiated

8   disposition was a result of a lot of advocacy, and so the range

9   between 10 and 15 years is something -- and we lobbied very

10  hard for there not to be a mandatory minimum of 10 years

11  feeling like that was a very significant sentence for

12  Mr. Williams, who, as the government concedes, was not present

13  at the time of the robbery, was not the person who initially

14  organized.  That was Mr. Christian.

15          The information the government cites, they had the

16  benefit of course of presenting evidence at a trial that was

17  absolutely untested and uncrossed by us or our interests.  And

18  in fact, many of the co-defendants' counsel were happy to have

19  more of the blame be put on Mr. Williams during the trial.  So

20  to draw inferences based upon that proceeding when we were not

21  present and had no ability to test and cross-examine the

22  witnesses is not fair to Mr. Williams.

23          The testimony that did come was all cooperators that

24  was against Mr. Williams, and one of whom, Mr. Mallory, is on

25  video with Mr. Burden, literally plotting the murder of

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 15 of 35
Case 1:12-cr-00626-ER Document 208 Filed 01/20/16 Page 15 of 35          15
FCL3WILS                          Sentence

1  Mr. Williams.  Not only did he have certainly an interest in

2  minimizing his own role, but he also had a tremendous amount of

3  animosity towards Mr. Williams.

4          So, the lengthy sentence of incarceration of 10 years

5  here, the mandatory minimum, is necessary because it is a

6  mandatory minimum, but it is unfortunate.  A longer sentence

7  than 10 years is longer than necessary.  There must also be an

8  attempt at rehabilitation.  It can't just be punitive.  It

9  can't just be incarceration.  It must also be an attempt at

10  rehabilitation.

11          Mr. Williams, as your Honor knows, as Mr. Williams has

12  written to your Honor during the time of his incarceration --

13          THE COURT:  He has written to me.

14          MS. MARCUS:  Sorry?

15          THE COURT:  He has written to me.

16          MS. MARCUS:  About the trials and difficulties, the

17  tremendous difficulties that he had during the time of his

18  incarceration.  With the difficulties he had in feeling that he

19  was being assaulted when he was in prison.  It's not an easy

20  place for him.  He's much more -- he's done a tremendous job

21  since he's been in prison really finding his way to God,

22  finding a way towards peace for himself.  He is fully in God's

23  light now.  We've seen a change certainly in our relationship

24  with him and in his ability to be present and to communicate

25  with us as a result.  But it's been a great, great struggle for

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 16 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 16 of 35          16
FCL3WILS                          Sentence

1    him, and he still struggles.

2              So, we would greatly dispute that prison is somehow

3    better or okay for him, and he didn't do well in the community,

4    so you might as well keep him in jail for as long as you can.

5              Geneva, his partner in life, has stood by him this

6    entire case.  His son Kaden is here as well, your Honor.  You

7    heard him before.  He is thankfully sleeping now.  But he is a

8    tremendous light and benefit.  James's mother talked about how

9    different James became.  Kaden is now four.  He was just a baby

10   when James was first arrested in this case, so he hasn't had

11   enough of an opportunity.  He was just beginning to bond, you

12   know.  When these crimes were committed, Kaden wasn't born yet.

13   So Kaden has since been born.  There was a delay in when the

14   crimes were committed and he was arrested.  He has since been

15   born and he is a tremendous source of positivity.

16             His family, of course, is -- these kind of things have

17   a tendency to coalesce family and wake them up and attend to

18   needs.  This case and this experience and him going away for

19   such a significant period of time already has really mobilized

20   different members of his family to be more involved.

21             So, getting out he's also going to be significantly

22   older.  We mentioned in our submissions of course about aging

23   out and how people -- he's certainly a very different person.

24   He's also going to be coming out much older and with connection

25   and commitment to family.

FCL3WILS                          Sentence

```
 1            We also raise the research questioning the

 2    relationship between long sentence and improved public safety.

 3    A sentence of 10 years is more than sufficient.  And as the

 4    government conceded, again, his role in the offense, Rashawn

 5    Vassell got a sentence of 18 and a half years.  Giving him a

 6    sentence of 15 years is much too close to somebody who was

 7    actually in the apartment committing the robbery, who was one

 8    of the shooters in the robbery.  That would be a gross

 9    injustice to give him time close to that.

10            The PSR recommends the minimum.  They recommend 10

11    years, and that was a result -- he spent a lot of time talking

12    with Ms. Whitney.  She spent time with Mr. Williams, she went

13    and reviewed a lot of his life history records.  And she took

14    time to really be thoughtful and make a considered

15    recommendation of what she thought, having viewed all of the

16    massive amount of evidence that she was able to gather in the

17    case.

18            So, we urge your Honor to sentence him to 10 years on

19    Count Two, and one day on Count One.

20            THE COURT:  Thank you, Ms. Marcus.

21            Mr. Williams, you have an absolute right to address

22    the Court before I impose sentence.  Is there anything that you

23    wanted me to know or anything you wanted to say?

24            THE DEFENDANT:  Yes, sir.  I'm going to give you a

25    brief history of who I am as a person, as a dad.
```

FCL3WILS                          Sentence

1            With all due respect, it is the prosecution job to do

2       a thorough investigation concerning me, my past prior history,

3       so forth.  And the case of Elisha Stubbs, I was charged with

4       attempted murder.  Attempted murder and menacing.  After all

5       the information that the City of Newburgh Police Department

6       received, even from their main witness, Donovan James a/k/a

7       Snoopy, and the government is more than welcome to look into

8       this matter, he took the stand and even admitted that I wasn't

9       even there.  That I had no part to do with it.  All of their

10      witnesses stated that.  That's why I was acquitted.

11           Being how the government wanted to find me guilty on

12      something because I sat in jail for two years, even when they

13      had a Brady violation, when I wrote to you before, I was

14      familiar with the Brady violation, so I sat in jail for two

15      years, even when the government was withholding Brady material.

16      And the police, the City of Newburgh didn't do a thorough

17      investigation.  However, I'm -- the reason I'm telling you is

18      to give you a history on Jamar Mallory, Kevin Burden, and where

19      the dislike and hatred comes from, and why so many people have

20      it in for me because of this case.

21           Elisha Stubbs was very liked in the community.  He was

22      related to Jamar Mallory and Kevin Burden.  So you have a lot

23      of people in the neighborhood who felt I got off the hook.

24      That they felt like I really had something to do with that.

25      But in all due respect, I had nothing to do with that.

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 19 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 19 of 35        19
FCL3WILS                          Sentence

1              So I was living in the community where a lot of people

2      was smiling in my face, but they was plotting my demise behind

3      my back.

4              So any given situation that they could take, they

5      would have did that.  And the police department, to try to mend

6      their wrongs, and the prosecution put in the newspaper

7      concerning me.  Where the guy named Maurice Owens who got

8      caught selling drugs and so forth, and he lied on the stand.

9      He never showed up so my attorney could cross-examine him and

10     he left.  But during that process, the prosecution felt to put

11     in the newspaper that James Williams said that stitches gets

12     snitches.  Snitches get stitches, and all that type of stuff.

13     And then they tried to put me in a Abner Alvarez case.  And me

14     and Abner Alvarez, we share the same child's mother, and it was

15     the prior case that happened before with that case.

16             So what happened was I had people from -- people not

17     liking me in the City of Newburgh that wanted my demise, and I

18     had people from the black community that wanted my demise.  So

19     I was in the crossroad of two things trying to figure out -- I

20     got caught in, you could say, some politics.  Some politics on

21     the police department and the prosecution.

22             And this, so when the police, the feds are doing their

23     sweeps in the City of Newburgh, everybody start making up

24     rounds and in the Spanish community and the black community.

25     Now everybody said, well, the feds are doing this because of

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 20 of 35
Case 1:12-cr-00626-ER Document 263 Filed 01/20/16 Page 20 of 35          20
FCL3WILS                         Sentence

1    James Williams, because of James Williams, because it was

2    placed in the newspaper article about James Williams.  So

3    everybody felt like why he still out there.

4           So you got single mothers still out there, and I'm out

5    there with obviously with Geneva, so a lot of people felt

6    jealous and a lot of people wanted revenge, because they felt I

7    had something to do with these crimes that took place that I

8    had nothing do with.

9           This case that -- so I say that because the government

10   claims that they would have had so many witnesses.  Of course,

11   because a lot of people feel like I am the cause of their

12   child's father or their sister or brother being in jail for

13   what happened during the Elisha Stubbs case.

14          Now if it was up to the prosecution, like I told my

15   attorneys, everybody do their investigation.  They would have

16   clearly seen that the way this case was being, how it was all

17   set up for me to take the fall.  It was all this, but I was

18   willing to take responsibility.  Not because I'm guilty of

19   anything or that I did anything wrong.  But simply because

20   there was a weapon that I did, I did know there was a weapon.

21   However, I told the individuals not to go commit a robbery.  I

22   even went to go and stop the robbery from happening.

23          When this case first started, I was willing to take 10

24   years for everybody.  But my co-defendants and everybody had a

25   different agenda.  They even placed me and what was that --

Case 1:12-cr-00626-ER Document 446-5 Filed 10/06/20 Page 21 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 21 of 35        21

FCL3WILS                          Sentence

1   Westchester County, where the whole bunch of Spanish people was

2   at.  I got jumped over there by a whole bunch of Spanish people

3   who felt I had something to do with that.

4           Then I got sent over here.  Then I had a problem where

5   they kept me in the box for nine months for no reason over

6   here.  So they just kept on moving me back and forth.  So I

7   never really had the opportunity to talk to my co-defendants or

8   really sit down with my attorneys really during that time and

9   really give them this details that I'm giving your Honor now.

10          So with all due respect, I'm willing to take any time

11  you're willing to impose.  Any time that you're willing to

12  impose.  Because with all due respect, your Honor, the truth

13  shall set you free.  My truth is that I did know there was a

14  weapon.  My truth is also that I told them not to take the

15  weapon.  And my truth is I went to go stop it from happening.

16  That's my truth.  I could speak upon me.

17          But as far as anything else is, they never went to my

18  apartment because I had no apartment.  Like he said they went

19  to my -- found crack cocaine.  I had no residency.  I was

20  sleeping in a hotel room.  I was living with her every so

21  often.  They raided the apartment, they didn't find nothing in

22  there.  I didn't have no residence.  They checked 156

23  Washington Street during this case with Elisha Stubbs.  They

24  went in there, they didn't find no crack cocaine in that case

25  neither.  They checked my clothes, they checked ballistics,

FCL3WILS                        Sentence

 1    they had witnesses.  They did a poor investigation.  The same

 2    as they did in this case.  They raided my house when my son was

 3    in there.  They found no weapon.  They found nothing that could

 4    link me to the individuals who had a dislike towards me.  And

 5    that's the bottom line.  So, Geneva is here, she could verify

 6    that.  I'm pretty sure the police report would verify that.  I

 7    didn't have no residence.

 8            So in the indictment, when they said that me and

 9    everybody met at my apartment, I had no apartment.  I was

10    struggling.  I had no apartment to speak of.  We wasn't at

11    Geneva's house.  We weren't at Jamar Mallory's house.  I was

12    living in a hotel.  I was staying at the Econo Lodge.  So I had

13    no residence where the police could bring up in there and find

14    weapons and crack cocaine and all this different stuff they

15    claimed they found, which is a lie.

16            The police department,  and the sad thing about this,

17    your Honor, is you got a lot of individuals who used the

18    government as a crutch.  They go out there and they commit

19    crimes, and they inform for the government at the same time,

20    such as Jamar Mallory and such as many other people that will

21    say anything, and it's disgusting to me that somebody lost

22    their life and somebody would use somebody's death as a crutch

23    to get off of a case or out of a situation.

24            But I was always taught to be a man and take

25    responsibility for my actions.  So I take responsibility for my

FCL3WILS                          Sentence

1    actions.

2            Now there was a discrepancy between me and my

3    attorneys because I didn't discharge no weapon or hand anybody

4    a weapon.  But being I know there was a weapon, I copped out to

5    that.  So I ask that you take that into consideration.

6            With all due respect, God's will will be done and it

7    will be done concerning me.  You said based on my PSI report

8    that comes back you would determine my sentence.  That's what

9    you stated before, your Honor.  So, I'm just holding you to

10   your word, that's it.

11           THE COURT:  Thank you, Mr. Williams.

12           MR. BAUER:  Judge.

13           THE COURT:  Based on Mr. Williams' statement, does

14   either party want to -- Ms. Marcus or Mr. Bauer?

15           MS. MARCUS:  I would like to remind the Court,

16   Mr. Williams' allocution at the time of the plea was that he

17   allowed others to take possession of a weapon that he knew

18   could be used in a robbery and was discharged, and that

19   satisfies the elements of the offense.

20           MR. BAUER:  Judge, on that point, we were looking over

21   the allocution, and Mr. Williams did allocute as Ms. Marcus

22   just said.  At the end he said something that made it similar

23   to what he said here today, that he didn't condone the robbery,

24   and I think he said he tried to talk the person out of doing

25   the robbery.

Case 1:12-cr-00626-ER  Document 440-5  Filed 10/06/20  Page 24 of 35
Case 1:12-cr-00626-ER  Document 268  Filed 01/20/16  Page 24 of 35     24
FCL3WILS                    Sentence

1          So we had asked you to clarify with Mr. Williams that

2     irrespective of that, he gave the gun knowingly and he did so

3     knowing it could be used in the robbery, and that was

4     sufficient to meet the elements of the plea.

5          I'm not sure Mr. Williams has said anything

6     inconsistent with that here today, so I'm not sure you need to

7     ask him any further questions, but I leave it to you.

8          THE COURT:  Very well.

9          MR. BAUER:  The one thing that did concern me, if we

10    could ask Mr. Williams, in the middle there, and I'm thinking

11    about potential future litigation when I ask this question, is

12    he said he didn't have time to talk to his lawyers.  It is my

13    understanding, having spoken to counsel, that -- without them

14    waiving any privilege -- that they made a number of efforts to

15    speak to him, and they did speak to him a number of times.

16         Perhaps you can ask Mr. Williams if that reference was

17    to a reference early on in the case.  But sitting here now, if

18    he was given that time.

19         THE COURT:  If he said that precisely, I may have

20    missed what the timing of it was.

21         MS. MARCUS:  I think he said he didn't have time to

22    review the PSR with us.

23         THE DEFENDANT:  No, that's not what I said.

24         MR. BAUER:  I think he was talking about early in the

25    case.  So I guess I just wanted, I wanted to be clear, you

FCL3WILS                    Sentence

1    asked Mr. Williams before he pled guilty if he was satisfied

2    with his attorneys' representation.  Perhaps we could just

3    clarify that.

4             THE COURT:  Okay.  Mr. Williams, at the time that you

5    pled guilty, I asked you, and you were under oath, and you said

6    you were satisfied with the representation of Mr. Jasper and

7    Ms. Marcus at the time that you took a guilty plea.  Are you

8    saying something different now or were you satisfied at that

9    time with their representation?

10            THE DEFENDANT:  What I was saying, your Honor, to

11   clarify, was that the investigation in this case, they couldn't

12   really thoroughly investigate the case as far as because I was

13   having issues concerning where I was being placed and things of

14   this nature.  So the things I am disclosing to them now, I

15   haven't disclosed that information either to Susan Marcus or

16   Richard Jasper, because at that particular time I didn't know

17   who to trust because I was being flipped over here, I was going

18   over here, I was all over the place.  So, the stuff that the

19   government is claiming to use in my PSI and things of that

20   nature, the things I told you, I haven't really told my defense

21   counsel.  And that's what that lies at.

22            MS. MARCUS:  Judge, if I may, I don't think that the

23   Court is going to hold an acquittal against Mr. Williams for

24   the prior case.  I will say that Mr. Jasper and I did do an

25   extensive amount of investigation on that prior case that did

FCL3WILS                        Sentence

1    come up at some point in this case.  We spoke with his prior

2    counsel, Catherine Lee, on that case, we spoke with witnesses

3    on that case.  And were satisfied that the acquittal was in

4    fact the right result.  So we did spend a great deal of time

5    looking into that, but he was acquitted on that prior case.

6            THE COURT:  Ms. Marcus is absolutely correct that I am

7    not going to hold that prior case against you, Mr. Williams, in

8    way, shape or form.  That will not be part of my sentence.

9            THE DEFENDANT:  Thank you, sir.

10           THE COURT:  Okay?

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  Mr. Bauer, do you wish me to ask any other

13   questions?

14           MR. BAUER:  No, I guess that -- I guess the

15   clarification, I think, unless you disagree, your Honor, is

16   satisfactory as to Mr. Williams' views on his counsel.

17           THE COURT:  I should probably state for the record,

18   Mr. Williams made reference to various correspondence that he

19   provided to me and other members of the government concerning

20   difficulties that he believed he was having with his

21   representatives on the case.  In particular, he believed, and

22   this is part of what was provided to me by Ms. Marcus and

23   Mr. Jasper.  Of course I do recall at the time that it was

24   occurring that Mr. Williams believed that certain individuals

25   associated with the state prosecutors office were making

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 27 of 35
Case 1:12-cr-00626-ER Document 208 Filed 01/20/16 Page 27 of 35                    27
FCL3WILS                          Sentence

1   believe they were other people representing his interests, and

2   he was obviously very concerned about that.

3          It is partly as a result of that correspondence and

4   other issues that were communicated to me by Ms. Marcus and

5   Mr. Jasper that a doctor whose name escapes me right now had

6   the opportunity to examine him early on in this case.  Based on

7   those observations, I determined, with the consent of the

8   government and the consent of the defendant, that it was

9   appropriate to have Mr. Williams examined so we could have some

10  professional determination as to his mental health and his

11  ability to participate effectively in his defense.

12         After that evaluation was conducted, it was determined

13  that Mr. Williams was indeed competent.  But, the issue of

14  Mr. Williams' mental health has certainly always been at the

15  forefront of this case.

16         I am satisfied, based on the representation that he's

17  made and the representations of Ms. Marcus that he is satisfied

18  with the representation that he received, that he was satisfied

19  at the time that he took the guilty plea with the

20  representation that he received.  And based on my observations,

21  based on my vantage point, Mr. Jasper and Ms. Marcus have done

22  extraordinary work in communicating with Mr. Williams,

23  attempting to communicate with him at times when it was

24  difficult to do so, making sure that he received the very best

25  professional help, and advocating forcefully on his behalf.  So

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 28 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 28 of 35          28
FCL3WILS                          Sentence

1    that will be that.

2           Unless there is anything else, in deciding what

3    sentence to impose, I have considered all of the factors set

4    forth in Section 3553(a) of Title 18 of the United States Code,

5    including Mr. Williams' history and characteristics and the

6    nature and circumstances of the offense.  I have considered the

7    need for the sentence imposed to reflect the seriousness of the

8    offense, to promote respect for the law, to provide just

9    punishment for the offense, to afford adequate deterrence to

10   criminal conduct, to protect the public, and to provide

11   Mr. Williams with needed medical or other correctional

12   treatment in the most effective manner.  I have considered the

13   guidelines issued by the sentencing commission, and the

14   applicable commentaries thereto.  And as particularly important

15   in this case, I've considered the need to avoid unwarranted

16   sentence disparities among similarly situated defendants.

17          And having considered all of these factors, it is my

18   intention to accept the recommendation of the probation

19   department and impose a sentence of 120 months, plus one day on

20   the counts of conviction.  That will be followed by three years

21   of supervised release on each count to be served concurrently.

22   I will also impose the $100 special assessment as I am required

23   for a total of $200.  I will not impose a fine as I find that

24   Mr. Williams is not able to pay a fine.  And I believe that

25   this sentence is sufficient but not greater than necessary to

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 29 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 29 of 35                29

FCL3WILS                          Sentence

1    comply with the purposes of sentencing set forth in Section

2    3553(a)(2) for the following reasons.

3            First of all, I note that this is obviously an

4    incredibly serious crime with tragic consequences.  As

5    Mr. Bauer indicated, I presided over the trial of the three

6    co-defendants and was able to see through the testimony of the

7    various cooperating witnesses the environment in which

8    Mr. Williams was raised.  And it is truly disturbing the lack

9    of appreciation on the part of all these young men,

10   Mr. Williams included, the fragility or sanctity of human life,

11   much less the danger they exposed themselves to on a daily

12   basis.  It was truly, as one of the defense lawyers put it in

13   his opening statement, another world that the jury would have

14   to enter in order to try to understand what motivated these

15   young men.

16           And to be sure, no one in this room should be terribly

17   surprised that Mr. Williams turned out as he did and came to

18   live the life that he did.  He is a person, like several of his

19   co-defendants, about whom it can be said that he barely had a

20   chance in life.  His father abandoned him, his mother was

21   unable to care for him and his older brothers as a result of

22   her addictions and mental health problems.  The difficulties

23   that he faced as a child are almost Dickensian in terms of the

24   relentless misery that he lived through.

25           I read with particular interest the letter of

Case 1:12-cr-00626-ER   Document 440-5   Filed 10/06/20   Page 30 of 35
Case 1:12-cr-00626-ER   Document 263   Filed 01/20/16   Page 30 of 35     30
FCL3WILS                         Sentence

 1   Mr. Williams' brother John, when he was still a child himself,

 2   was the role model that Mr. Williams looked up to.  And when

 3   John was arrested at 16 years of age, Mr. Williams was left

 4   homeless at 15 years of age.

 5        So it truly is a tragedy that he had to live through,

 6   and no doubt he probably experienced, as was evident in the

 7   reports that were submitted, undiagnosed mental health issues

 8   even as a very young child.

 9        At the same time, the Court cannot overlook the

10   immensity of the criminal activity that led Mr. Williams here.

11   A man is dead and Mr. Williams played a supporting role in his

12   death.  The sentencing guidelines rightfully reserve the most

13   serious sentences for cases such as these.  And Mr. Williams, I

14   have to say, has been granted an extraordinary benefit by the

15   government, and I congratulate the government for its

16   reasonableness on the circumstances of this case by being

17   allowed to plead to an offense that is limited to no more than

18   15 years' incarceration.

19        I must also note that despite the mental health

20   difficulties that have been discussed and that play such a

21   prominent role in the defense submission, Mr. Williams has

22   always seemed to me to be a person of some skill.  Even today

23   when he spoke, he spoke very eloquently on his own behalf.  He

24   clearly had an idea of what he wanted to say and he said it

25   cogently and he said it well.  And I recall that during the

FCL3WILS                    Sentence

1    videotape that was played at trial, one of the gentlemen, I

2    forget whether it was Mr. Burden or Mr. Mallory, referred to

3    Mr. Williams' leadership role and noted that Mr. Williams was

4    able to inspire the respect of the other young men who were

5    part of his set, as it were.  Noting that Mr. Williams had the,

6    quote, gift of gab.

7         I also note that Mr. Williams, at age 31 now, was

8    substantially older than the other defendants in this case,

9    almost all of whom I believe were 21 years or younger at the

10   time that the crime was committed.  So he does have some skills

11   that he was able to use, unfortunately, in connection with his

12   criminal activities.

13        I have no doubt that there is continuing mental health

14   issues that are afflicting Mr. Williams.  And I have, despite

15   my observations of his sometimes very articulate arguments, I

16   have no sense whatsoever that he is malingering.  It therefore

17   becomes difficult to know what exactly can be done, what is

18   right in terms of imposing sentence with an individual with the

19   background that Mr. Williams has, the serious crime with which

20   he has been convicted, and the needs that we now take on as a

21   responsibility in order to look after his mental health needs.

22   It is difficult to know what's right, and there is no magic to

23   any of these numbers.

24        But I believe that on the whole, it will do neither

25   Mr. Williams nor society much good to keep him in jail for

FCL3WILS                              Sentence

1    longer than 10 years.  10 years is an awfully long time, and he

2    will have the benefit of mental health treatment during that

3    time.  And as difficult as it is in some of these cases, I do

4    believe that a sentence of 120 months and one day on Count One

5    is sufficient but not greater than necessary to meet the needs

6    of sentencing.

7            Is there any reason other than what's already been

8    stated why the sentence should not be imposed as I've

9    indicated, Mr. Bauer?

10           MR. BAUER:  No, your Honor.

11           THE COURT:  Mr. Jasper or Ms. Marcus?

12           MR. JASPER:  No, your Honor.

13           MS. MARCUS:  No, your Honor.

14           THE COURT:  In that event, it is the judgment of this

15   Court that Mr. Williams be commit to the custody of the bureau

16   of prisons for one day on Count One, and 120 months on Count

17   Two.  That will be followed by three years of supervised

18   release on both counts of conviction to be served concurrently.

19   I should add that the 120 months will be served consecutively

20   to the one day that is imposed on Count One.

21           The standard conditions one through 13 of supervised

22   release shall apply as well as the following special and

23   mandatory conditions:

24           The mandatory conditions are that Mr. Williams not

25   commit another federal, state or local crime; not illegally

Case 1:12-cr-00626-ER Document 440-5 Filed 10/06/20 Page 33 of 35
Case 1:12-cr-00626-ER Document 268 Filed 01/20/16 Page 33 of 35      33
FCL3WILS                     Sentence

1    possess a controlled substance; not possess a firearm or

2    destructive device; shall refrain from any unlawful use of a

3    controlled substance; and shall cooperate in the collection of

4    DNA as directed by the probation officer.

5           And the following special conditions shall apply:

6    Mr. Williams shall participate in an outpatient mental health

7    treatment program approved by the United States probation

8    office, and shall continue to take any prescribed medications

9    unless otherwise instructed by the health care provider.

10   Mr. Williams shall submit his person, residence, place of

11   business, vehicle, and any other premises under his control to

12   a search on the basis that the probation officer has reasonable

13   belief that contraband or evidence of a violation of the

14   conditions of release may be found.  The search must be

15   conducted at a reasonable time and in a reasonable manner.  And

16   failure to submit to such a search may be grounds for

17   revocation.  Mr. Williams is to report to the nearest probation

18   office within 72 hours of release.  And if he does not live in

19   this district, it is recommended that he be supervised by the

20   district of residence.

21          He's also ordered to pay the mandatory special

22   assessment of $100 on each count for a total of $200 which

23   shall be due immediately.

24          As I indicated previously, I will not impose a fine.

25   Is the government seeking forfeiture in this case?

FCL3WILS                        Sentence

 1              MR. BAUER:  No, your Honor.

 2              THE COURT:  Very well.  That constitutes the sentence

 3      of this Court.

 4              Mr. Williams, because I sentenced you to below the

 5      stipulated range in your plea agreement with the government,

 6      your appellant rights are very limited.  However, Mr. Jasper

 7      and Ms. Marcus, will you assure me that you will promptly and

 8      thoroughly discuss with Mr. Williams the effect of the plea

 9      agreement on his appellate rights?

10              MR. JASPER:  Yes, your Honor.

11              THE COURT:  Are there any other applications?

12              MR. BAUER:  From the government, just one.  There are

13      a number of other counts in the underlying charging

14      instruments.  The original indictment through the S3.  The

15      government would move to dismiss all of those open counts at

16      this time.

17              THE COURT:  That application is granted.

18              Ms. Marcus.

19              MS. MARCUS:  Yes, Judge.  We would ask for a

20      designation to Devens Medical Facility for Mr. Williams.

21              THE COURT:  I will make that recommendation.  However,

22      Mr. Williams, you should understand that I can only recommend

23      to the bureau of prisons where they designate you.  I can't

24      direct them to one particular facility.  Is there anything

25      else?

FCL3WILS                              Sentence

1            MR. JASPER:  No, your Honor.

2            THE COURT:  In that event, we are adjourned.

3    Mr. Williams, good luck to you, sir.

4                             o0o

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25